UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MINNESOTA

| | |
|---|---|
| Knife Rights, Inc.; Cameron Sjodin; David Draeger; and Kevin Crystal,<br><br>    Plaintiffs,<br><br>    v.<br><br>Keith Ellison, in his official capacity as Attorney General of the State of Minnesota; Brad Wise, in his official capacity as Sheriff of the Anoka County Sheriff's Office; Mike Meheen, in his official capacity as Chief of the South Lake Minnetonka Police Department; Brad Johnson, in his official capacity as County Attorney of the Anoka County Attorney's Office; and Mary Moriarty, in her official capacity as County Attorney of the Hennepin County Attorney's Office,<br><br>    Defendants. | Case No.  0:24-cv-3749 |

## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

Plaintiffs Knife Rights, Inc., Cameron Sjodin; David Draeger; and Kevin Crystal for their Complaint against Defendants Keith Ellison Brad Wise, Mike Meheen, Brad Johnson, and Mary Moriarty, state and allege as follows:

### INTRODUCTION

1.  In *District of Columbia v. Heller*, the Supreme Court made clear that the "18th-century meaning [of "Arms"] is no different from the meaning today." 554 U.S. 570, 581 (2008). That is to say, "arms" are "'[w]eapons of offence, or armour of defence.'" *id.* (quoting 1 Dictionary of the English Language 106 (4th ed.) (reprinted

1978)), and further defined arms to mean "'anything that a man wears for his defence, or takes into his hands, or useth in wrath to cast at or strike another.'" *Id.* (quoting 1 A New and Complete Law Dictionary (1771) (cleaned up)).

2. Knives are "arms" protected under the plain text of the Second Amendment. The "Second Amendment extends, prima facie, to all instruments that constitute bearable arms, even those that were not in existence at the time of the founding." *N.Y. State Rifle & Pistol Ass'n, Inc. v. Bruen*, 142 S.Ct. 2111 at 2132 (2021) (quoting *Heller*, 554 U.S. at 582). Indeed, the Supreme Court made clear in *Bruen* that the Second and Fourteenth Amendments protect the right to acquire, possess, and carry arms for self-defense and all other lawful purposes—inside and outside the home.

3. Despite Supreme Court precedent, the State of Minnesota makes it a crime, punishable by imprisonment, fine, or both, for "[w]hoever does any of the following … manufactures, transfers, or possesses … a switch blade knife opening automatically[.]" Minn. Stat. § 609.66, subd. 1(a)(4) (2023). This statute represents a complete ban on anyone ("whoever") that manufactures, transfers, or possesses an automatic opening knife ("switchblade") ("Knife Ban").[1] The Knife Ban is part of Chapter 609 of the Minnesota Criminal Code of 1963 (*see* Minn. Stat. § 609.01), and the criminal sentencing provisions of the Knife Ban are found in Minn. Stat. § 609.66, subd. 1(b) (2023).

---

[1]   Minn. Stat. § 609.66, Subd. 2 states, "[n]othing in this section prohibits the possession of the articles mentioned by museums or collectors of art or for other lawful purposes of public exhibition."

4. Defendants enforce the Knife Ban and its enforcement denies individuals who reside in or visit Minnesota their fundamental, individual right to keep and bear these common, constitutionally protected arms.

5. Because the Second Amendment "is exercised individually and belongs to all Americans" (*Heller*, 544 U.S. at 581), and because it "elevates above all other interests the right of law-abiding, responsible citizens to use arms for self-defense," Bruen, 142 S. Ct. at 2118, Defendants' enforcement of the Knife Ban must be declared unconstitutional and enjoined.

## PARTIES

**Plaintiff Parties.**

6. Plaintiff Knife Rights, Inc. ("Knife Rights") is a section 501(c)(4) member advocacy organization incorporated under the laws of Arizona with a primary place of business in Gilbert, Arizona. Knife Rights serves its members, supporters, and the public through efforts to defend and advance the right to keep and bear bladed arms. Knife Rights has members and supporters in Minnesota and states throughout the Country. The interests that Knife Rights seeks to protect in this lawsuit are germane to the organization's purposes. Knife Rights sues on behalf of its members, including the Individual Plaintiffs herein, as part of Knife Rights' extraordinary efforts to protect its members from the Minnesota Knife Ban's operation, enforcement, and imposition of its several criminal penalties. Plaintiff Knife Rights is hereinafter referred to as the "Institutional Plaintiff" and/or "Knife Rights." Knife Rights' members include peaceable, law-abiding individuals in Minnesota that want to exercise their right to bear arms, now and in the fu-

ture, through the acquisition, possession, and carry of automatically opening knives prohibited under the Minnesota Knife Ban and Defendants' enforcement of that ban.

7. Organized in 2006, Plaintiff Knife Rights' mission is to, among other things, ensure that federal and state restrictions placed on knives are not only repealed, but stopped from ever being enacted. Knives are one of mankind's oldest and most commonly used tools, and their ownership and lawful possession, use, and carry are fully protected by the Second Amendment. Knife Rights seeks to ensure that the right to keep and bear these bladed arms is well protected through legislative efforts, defense of owners' civil rights through litigation and advocacy, and public education. Knife Rights serves its members, supporters, and the public through these efforts to defend and advance the right to keep and bear bladed arms.

8. As to bans on automatically opening knives (aka, "switchblade knives"), Knife Rights has worked to have switchblade bans repealed in 18 states. A detailed list of Knife Rights' legislative accomplishments is on the Knife Rights website at: https://kniferights.org/about/accomplishments, which is incorporated by reference herein.

9. As part of its educational efforts, Plaintiff Knife Rights' affiliated organization, Knife Rights Foundation, has published a downloadable app, "LegalBlade," summarizing each states' knife laws by "Knife Type" and providing the user with information on whether specific knives are legal for "Possession," "Open Carry," and "Concealed Carry" in each state. LegalBlade also provides direct links to each state's relevant knife/weapon statutes. Plaintiff Knife Rights supports and promotes the LegalBlade App.

4

10. Plaintiff Knife Rights is taking part in this legal action to further pursue its stated goals and purposes — and they are to expend substantial time, effort, money, and other resources directed at ensuring the Second Amendment right to bladed arms is fully protected in Minnesota and throughout the United States. Knife Rights' goals, purposes, and political, educational, and legislative accomplishments, however, are separate and distinct from its litigation efforts. Knife Rights, through its officers, volunteers and members, primarily advance the organization's political, educational, and legislative accomplishments. In contrast, Knife Rights' litigation endeavors require close work and coordination with special counsel, and that time, effort, and cost are over and above Knife Rights' customary activities and accomplishments. In short, while Plaintiff Knife Rights' political, educational, and legislative efforts are part and parcel of its customary actions and accomplishments, Knife Rights' litigation time, efforts, and costs incurred are extraordinary and distinct. Plaintiff Knife Rights' extraordinary expenditures of time, effort, and cost on litigation matters to protect knife rights have placed a real, concrete drain on Knife Rights' resources, particularly the funds relied upon from our member contributions, and funds to also pursue our other customary political, educational, and legislative efforts.  By expending substantial and extraordinary organizational time, effort, money, and other resources to challenge the Minnesota Knife Ban in court, Plaintiff Knife Rights has sustained injury, harm, and losses that are over, above, and beyond its customary actions and accomplishments. Such expenditures are exceptional and not merely in furtherance of Knife Rights' mission, goals, and purposes. Plaintiff Knife Rights' injury, harm, and losses may be avoided if Defendants were to take steps to repeal the Knife Ban.

However, such action requires Minnesota legislative action to repeal the Knife Ban or court intervention (as with this case), to ensure that such steps, if ever taken, are permanent. Absent such actions, the Knife Ban remains the law in Minnesota and is, and can be, enforced, now and in the future—along with its severe criminal penalties, consequences, and stigma.

11. Plaintiff Cameron Wallin Sjodin is an adult natural person, a citizen of the United States, and a resident of Excelsior, Minnesota. Plaintiff Sjodin is a peaceable, non-violent individual who is eligible to keep and bear arms under state and federal law. Plaintiff Sjodin wishes and intends to acquire, possess, and carry an automatically opening knife ("switchblade") for any lawful purpose, including self-defense. Plaintiff Sjodin would acquire, possess, and carry such a knife but for Defendants' enforcement of the laws, policies, practices, and customs at issue in this case and his reasonable fear of arrest and prosecution for violation of Defendants' Knife Ban. Plaintiff Sjodin is a member of Plaintiff Knife Rights.

12. Plaintiff David Johnathon Draeger is an adult natural person, a citizen of the United States, and a resident of Ham Lake, Minnesota. Plaintiff Draeger is a peaceable, non-violent individual who is eligible to keep and bear arms under state and federal law. Plaintiff Draeger wishes and intends to acquire, possess, and carry an automatically opening knife ("switchblade") for any lawful purpose, including self-defense. Plaintiff Draeger would acquire, possess, and carry such a knife but for Defendants' enforcement of the laws, policies, practices, and customs at issue in this case and his reasonable fear of

arrest and prosecution for violation of Defendants' Knife Ban. Plaintiff Draeger is a member of Plaintiff Knife Rights.

13. Plaintiff Kevin Crystal is an adult natural person, a citizen of the United States, and a resident of Hennepin County, Minnesota. Plaintiff Crystal is a peaceable, non-violent individual who is eligible to keep and bear arms under state and federal law. Plaintiff Crystal wishes and intends to acquire, possess, and carry an automatically opening knife ("switchblade") for any lawful purpose, including self-defense. Plaintiff Crystal would acquire, possess, and carry such a knife but for Defendants' enforcement of the laws, policies, practices, and customs at issue in this case and his reasonable fear of arrest and prosecution for violation of Defendants' Knife Ban. Plaintiff Crystal is a member of Plaintiff Knife Rights.

14. Plaintiffs Sjodin, Draeger, and Crystal are hereinafter collectively referred to as the "Individual Plaintiffs."

**Defendant Parties.**

15. Defendant Keith Ellison is the Attorney General of the State of Minnesota. Under Minnesota statutes and common law authority, Attorney General Ellison is the chief legal officer of the State with a duty to see that the laws of the state are uniformly enforced. Defendant Ellison is sued in his official capacity.

16. Defendant Sheriff Brad Wise is the elected Sheriff and chief law enforcement officer of the Anoka County Sheriff's Office. The Anoka County Sheriff's Office is the primary law enforcement agency for the municipality of Ham Lake, Minnesota. As Sheriff, he exercises, delegates, or supervises all the powers and duties of the Anoka

County Sheriff's Office, including enforcing the Minnesota Knife Ban. Defendant Wise is sued in his official capacity.

17.     Defendant Chief Mike Meehan is the chief law enforcement officer of the South Lake Minnetonka Police Department (SLMPD). The SLMPD is the primary law enforcement agency for the city of Excelsior, Minnesota. As Chief of SLMPD, Defendant Meehan exercises, delegates, or supervises all the powers and duties of the SLMPD, including enforcing the Minnesota Knife Ban. Defendant Meehan is sued in his official capacity.

18.     Defendant County Attorney Brad Johnson is the chief prosecutor of the Anoka County Attorney's Office. As the County Attorney, he exercises, delegates, or supervises all the powers and duties of the Anoka County Attorney's Office, including enforcing and prosecuting the Minnesota Knife Ban. Defendant Johnson is sued in his official capacity.

19.     Defendant County Attorney Mary Moriarty is the chief prosecutor of the Hennepin County Attorney's Office. As the County Attorney, she exercises, delegates, or supervises all the powers and duties of the Hennepin County Attorney's Office, including enforcing and prosecuting the Minnesota Knife Ban. Defendant Moriarty is sued in her official capacity.

**JURISDICTION AND VENUE**

20.     This Court has jurisdiction over all claims for relief pursuant to 28 U.S.C. §§ 1331, 1343, 2201, and 2202, and 42 U.S.C. §§ 1983 and 1988, as this action seeks to redress the deprivation under color of the laws, statutes, ordinances, regulations, customs,

and usages of the State of Minnesota, of the rights, privileges or immunities secured by the United States Constitution.

21. Venue lies in this Court under 28 U.S.C. § 1391, as the events giving rise to Plaintiffs' claims arose or exist in this District in which the action is brought.

## STATEMENT OF FACTS

22. Minnesota completely prohibits the manufacture, transfer, and possession (including carry) of a common automatically opening knife it classifies as a "switch blade knife opening automatically." Minn. Stat. § 609.66, sub. 1(a)(4) (2023).

23. Under the statute, "Whoever does any of the following is guilty of a crime and may be sentenced as provided in paragraph (b): … (4) manufactures, transfers, or possesses … a switch blade knife opening automatically…." *Id.*

24. Under Minn. Stat. § 609.66, subd. 1(b), a person convicted under subdivision 1(a)(4) of section 609.66,

> may be sentenced as follows:
>
> (1) if the act was committed in a public housing zone, …, a school zone, … , or a park zone, … , to imprisonment for not more than 364 days or to payment of a fine of not more than $3,000, or both; or
>
> (2) otherwise, including where the act was committed on residential premises …, to imprisonment for not more than 90 days or to payment of a fine of not more than $1,000, or both.

25. Minn. Stat. section 609.02, subdivision 6, defines "dangerous weapon" as: "…any device designed as a weapon and capable of producing death or great bodily harm, … or other device or instrumentality that, in the manner it is used or intended to be used, is calculated or likely to produce death or great bodily harm, … ." *Id.*

9

26. Automatically opening knives ("switchblades") are "arms" under the plain text of the Second Amendment. Moreover, Plaintiffs desire to keep and bear these arms for self-defense and any other lawful purpose. This conduct is covered by the plain text of the Second Amendment. As such, the Second Amendment presumptively protects the arms proscribed under the Knife Ban and the Plaintiffs' intended conduct. *Bruen*, 142 S. Ct. at 2126.

27. To justify an arm regulation, "the government must demonstrate that the regulation is consistent with the Nation's historical tradition of [arms] regulation." *Bruen*, 142 S.Ct. at 2126, 2130.

28. Automatically opening knives were first produced in the 1700s. *See* RICHARD V. LANGSTON, THE COLLECTOR'S GUIDE TO SWITCHBLADE KNIVES 30 (2001); *see also*, TIM ZINSER ET AL., SWITCHBLADES OF ITALY 7-8 (2003).

29. By the mid-nineteenth century, factory production of automatically opening knives made them affordable to everyday customers. See RICHARD V. LANGSTON, THE COLLECTOR'S GUIDE TO SWITCHBLADE KNIVES 30, at 7 (2001).

30. Indeed, on Plaintiffs' information and belief, millions of automatically opening knives have been in common use for decades.

31. Automatically opening knives are also common jurisdictionally. As of August 2024, at least 46 states allow the possession of automatically opening knives that Minnesota bans; and at least 36 states permit the public carry of said knives in some manner.

32. The automatically opening knives prohibited under the Defendants' enforcement of the Knife Ban are like other constitutionally protected knives that do not have the blade fixed in place in all relevant respects: They have a blade, a handle or grip, and the blade rests within the handle or grip of the knife when closed or collapsed, and when open or extended is "fixed" into a usable position (likewise through friction, geometry, or mechanical design) and may be used in the same manner as any other common knife.

33. Automatically opening knives "are particularly easy to open with one hand." *See, e.g.*, David Kopel, Clayton Cramer, and Joseph Edward Olson, *Knives and the Second Amendment*, UNIVERSITY OF MICHIGAN JOURNAL OF LAW REFORM, vol. 47, at 175 (Fall 2013). However, since a folding knife of any kind is only functional when fully opened, the argument that one method of opening a knife with one hand somehow increases the dangerousness to the public of a folding knife compared to the myriad of other methods of opening a knife with one hand is ludicrous. Whether a folding knife is opened manually or automatically, it is only useful, for any purpose, once it is fully opened. Thus, "Prohibitions on carrying knives in general, or of particular knives, are unconstitutional. For example, bans of knives that open in a convenient way (e.g., switchblades, gravity knives, and butterfly knives) are unconstitutional." *Id.* at 167.

34. In simple terms, an automatically opening knife is merely a folding pocket knife, an arm that is possession in millions of households throughout the country, including Minnesota. According to estimates from American Knife & Tool Institute, as many as 35,695,000 U.S. households own an outdoor knife or pocket knife. Moreover, assisted-

opening and one-hand-opening knives—which are functionally identical to automatically opening knives—represent approximately 80 percent of all knives sold in the United States.

35. Defendants' enforcement of the Knife Ban denies individuals who reside in Minnesota, including the named Individual Plaintiffs and the Institutional Plaintiff's members, their fundamental, individual right to keep and bear these common, constitutionally protected arms for any lawful purpose, including self-defense.

36. The Knife Ban has no historical pedigree, nor justification in the Nation's history and tradition of arms regulation. Indeed, the Knife Ban dates only to 1963.

37. Automatically opening knives, including those prohibited under the Knife Ban, are in common use for lawful purposes throughout the vast majority of the United States. Because automatically opening knives, including those prohibited under the Knife Ban, are possessed by peaceable people, they are not (and could not be) *both* "dangerous *and* unusual" arms.

38. There is no constitutionally relevant difference between knives the that may be acquired, possessed, and carried on a person in Minnesota and those prohibited under the Knife Ban.

**COUNT I**
**(By All Plaintiffs Against All Defendants)**
**DEPRIVATION OF CIVIL RIGHTS/RIGHT TO KEEP AND BEARARMS**
**U.S. CONST., AMENDS. II AND XIV (42 U.S.C. § 1983)**

39. Plaintiffs reallege and incorporate by reference all previous paragraphs of this Complaint.

40. There is an actual and present controversy between the parties.

41. The Second Amendment to the United States Constitution provides:

> A well-regulated Militia being necessary to the security of a free State, the right of the people to keep and bear Arms shall not be infringed.

In interpreting this text, the courts are guided by the principle that the "Constitution was written … and "its words and phrases were used in their normal and ordinary as distinguished from technical meaning." *Heller*, 554 U.S. at 576. Further, the Supreme Court instructs the lower courts to "start" with the "strong presumption that the Second Amendment right is exercised individually and belongs to all Americans." *Id.* at 581.

42. The Fourteenth Amendment to the United States Constitution provides in relevant part that:

> No state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any state deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.

43. The Second Amendment is fully applicable to the States through the Fourteenth Amendment's Due Process and Privileges or Immunities Clauses. *McDonald v. City of Chicago*, 561 U.S. 742, 750 (2010); *id.* at 805 (Thomas, J., concurring).

44. "The constitutional right to bear arms in public for self-defense is not a second-class right, subject to an entirely different body of rules than the other Bill of Rights guarantees." *Bruen*, 142 S. Ct. at 2156 (quoting *McDonald*, 561 U. S., at 780 [plurality opinion]).

45. "The very enumeration of the [Second Amendment] right takes out of the hands of government"—including Defendants—"the power to decide on a case-by-case basis whether the right is *really worth* insisting upon." *Heller*, 554 U.S. at 635 (emphasis in original).

46. In *Heller*, the Supreme Court declared unconstitutional the District of Columbia's laws that, among other things, prevented Mr. Heller from having a handgun "operable for the purpose of immediate self-defense." 554 U.S. at 635. The word "immediate" means, as is relevant here, "occurring, acting, or accomplished without loss or interval of time," i.e., "instant," "existing without intervening space or substance," and "acting or being without the intervention of another object, cause, or agency." *See, e.g.*, https://www.merriam-webster.com/dictionary/immediate.

47. The Supreme Court "already recognized in Heller at least one way in which the Second Amendment's historically fixed meaning applies to new circumstances. The Second Amendment's reference to arms does not apply only to those arms in existence in the 18th century." *Bruen*, 142 S. Ct. at 2132 (quoting *Heller*, 554 U.S. at 582).

48. "Just as the First Amendment protects modern forms of communications, and the Fourth Amendment applies to modern forms of search, the *Second Amendment extends, prima facie, to all instruments that constitute bearable arms, even those that were not in existence at the time of the founding*." *Id.* (emphasis added). "Thus, even though the Second Amendment's definition of arms is fixed according to its historical understanding, that general definition covers modern instruments that facilitate armed

14

self-defense. *Cf. Caetano v. Massachusetts*, 577 U. S. 411, 411-412, 136 S. Ct. 1027, 194 L. Ed. 2d 99 (2016) (per curiam) (stun guns)." *Id.*

49. In *Caetano*, Justice Alito issued a concurring opinion, joined by Justice Thomas, explaining that, in determining whether an arm is protected under the Second Amendment, "the pertinent Second Amendment inquiry is whether stun guns are commonly possessed by law-abiding citizens for lawful purposes today." *Caetano v. Massachusetts*, 577 U.S. 411 at 420.

50. As Justice Alito further explained, "[t]he more relevant statistic is that hundreds of thousands of Tasers and stun guns have been sold to private citizens, who it appears may lawfully possess them in 45 States." *Id.* (quoting *People v. Yanna*, 297 Mich. App. 137, 144, 824 N. W. 2d 241, 245 (2012) (holding Michigan stun gun ban unconstitutional) (cleaned up).

51. In *Bruen*, the Court reaffirmed principles clearly applied in Heller. Bruen also reiterated, among other things, that "the Second Amendment extends, prima facie, to all instruments that constitute bearable arms." *Id.* at 2132 (emphasis added).

52. There can be no dispute over the proper approach to evaluating Second Amendment claims. First, the Court must determine whether "the Second Amendment's plain text covers an individual's conduct" that is being restricted by a challenged law or policy. *Bruen*, 142 S. Ct. at 2129-2130. Second, if the answer is yes, the conduct is presumptively protected, and the burden then falls on the government to justify the challenged restriction by "demonstrating that it is consistent with the Nation's historical tradition of firearm regulation." *Id.* at 2130. If the government cannot make this demonstra-

tion, the restriction is unconstitutional, full stop. No interest-balancing or levels-of-scrutiny analysis can or should be conducted. *Id.* at 2127.

53. Automatically opening knives—including those proscribed under the Knife Ban—are widely possessed and used for lawful purposes across much of the Country.

54. *Bruen* confirms that the Second Amendment's plain text covers the arms (knives) and conduct Plaintiffs wish to engage in (keep and bear arms). *Bruen* also confirms that Heller already conducted the relevant historical analysis for determining whether a particular arm falls within the Second Amendment's protection. In order for a ban of an arm to be consistent with this Nation's history of firearm regulation, the government must demonstrate that the banned arm is both "dangerous and unusual." *Id.* at 2143. Arms that are in "common use today" simply cannot be banned. *Id.*

55. To be clear, "this is a conjunctive test: A weapon may not be banned unless it is *both* dangerous *and* unusual." *Caetano*, 577 U.S. at 417 (Alito, J., concurring) (emphasis original). Automatically opening knives are neither dangerous nor unusual within the meaning of this standard.

56. First, automatically opening knives are no more "dangerous" than any other bladed weapon that is not prohibited by Minnesota law. By any rational definition, automatically opening knives are merely folding pocket knives.

57. Moreover, automatically opening knives are unquestionably less dangerous than handguns, as handguns and all other kinds of firearms exact lethal force at a distance. However, handguns are not considered "dangerous" enough to justify any kind of prohibition under this formulation. In fact, "knives are far less dangerous than guns." Ko-

pel et al., *Knives and the Second Amendment*, UNIVERSITY OF MICHIGAN JOURNAL OF LAW REFORM, vol. 47, at 167, 181-184 (Fall 2013) (collecting statistics on use of knives versus guns in violent crimes).

58. Neither can automatically opening knives be considered "unusual" under this standard. When an arm is possessed and used by thousands for lawful purposes, it is "in common use" and it is protected — full stop. If an arm is in common use, it necessarily cannot be *both* "dangerous and unusual." And moreover, even arms not "in common use" cannot be banned so long as they are no more dangerous than other arms that are in common use.

59. Even if the numerical quantity of any arm is difficult to establish, an arm being in common use can be proven by categorical and jurisdictional commonality. If an arm is categorically analogous or similar enough to a protected arm and it is lawful for them to be sold to private citizens in the majority of states, then the arm is common. As such, it cannot be *both* "dangerous and unusual" if it is lawful to possess and use in a majority of the Country.

60. Common use operates in one direction: An arm that is initially uncommon can become common over time, but an arm that is common cannot become uncommon.

61. Quite simply, Defendants' enforcement of the Knife Ban prohibits constitutionally protected arms and conduct, and thus violates the Second and Fourteenth Amendments to the United States Constitution.

62.     Plaintiffs Sjodin, Draeger, and Crystal desire and intend to exercise their right to keep and bear an automatically opening knife for lawful purposes including self-defense, and would do so, but for the Defendants' enforcement of the Knife Ban.

63.     Plaintiff Knife Rights' Minnesota members desire and intend to exercise their right to keep and bear automatically opening knives for lawful purposes including self-defense, and would do so, but for Defendants' enforcement of the Knife Ban.

64.     On information and belief, Defendants have been and are actively enforcing the Knife Ban. Plaintiffs reasonably fear that Defendants will continue to enforce the Knife Ban against them.

65.     By enforcing Minnesota's Knife Ban against the Individual Plaintiffs, and Institutional Plaintiff's members, Defendants have violated the Plaintiffs' rights protected under the Second and Fourteenth Amendments.

66.     The Defendants' enforcement of the laws, policies, practices, and customs at issue in this case against Plaintiffs and other similarly situated members of the public cause injury and damage actionable under federal law, 42 U.S.C. §1983. Plaintiffs thus seek declaratory and injunctive relief and the recovery of attorneys' fees and costs.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs pray for judgment against Defendants and that this Court:

A.     Adjudge, decree and declare the rights and other legal relations of the parties to the subject matter in controversy in order that such declarations shall have the force and effect of final judgment and that the Court retain jurisdiction of this matter for the purpose of enforcing the Court's Orders;

  B. Pursuant to 28 U.S.C. § 2201, declare that the Knife Ban and Defendants' enforcement of the Knife Ban violates the right to keep and bear arms protected under the Second and Fourteenth Amendments to the U.S. Constitution;

  C. Pursuant to 28 U.S.C. § 2202, Fed. R. Civ. P. 65, and 42 U.S.C. § 1983, grant preliminary and permanent injunctive relief restraining the Defendants and their officers, agents, servants, employees, and all persons in concert or participation with them who receive notice of the injunction, from enforcing the Knife Ban;

  D. Pursuant to 28 U.S.C. § 2202, Fed. R. Civ. P. 65, and 42 U.S.C. § 1983, award Plaintiffs nominal and compensatory damages, and pre-judgment and post-judgment interest on these awards as to Defendants Sheriff Brad Wise, Chief of Police Mike Meehan, County Attorney Brad Johnson, and County Attorney Mary Moriarty;

  E. Pursuant to 42 U.S.C. § 1988, Fed. R. Civ. P. 54(d), and other applicable law, award Plaintiffs their reasonable attorneys' fees and costs; and

  F. Grant all other and further legal and equitable relief, including injunctive relief, against Defendants as necessary to effectuate the Court's judgment, and/or as the Court otherwise deems just and equitable.

Dated: September 26, 2024

**CROSSCASTLE PLLC**

/s/Harry N. Niska
Harry N. Niska (#0391325)
Nicholas J. Nelson (#391984)
14525 Highway 7, Ste. 345
Minnetonka, MN 55345
P (612) 429-8100
F (612) 234-4766
harry.niska@crosscastle.com
nicholas.nelson@crosscastle.com

**DILLON LAW GROUP APC**
John W. Dillon (SBN: 296788)
*Pro Hac Vice Forthcoming*
Dillon Law Group APC
2647 Gateway Road Suite 105, No. 255
Carlsbad, California 92009
Phone: 760-642-7150
Jdillon@dillonlawgp.com

***Attorneys for Plaintiffs***