UNITED STATES DISTRICT COURT

DISTRICT OF MINNESOTA

| | |
|---|---|
| Knife Rights, Inc.; Cameron Sjodin; David Draeger; and Kevin Crystal,<br><br>　　　　　　　Plaintiffs,<br><br>vs.<br><br>Keith Ellison, in his official capacity as Attorney General of the State of Minnesota; Brad Wise, in his official capacity as Sheriff of the Anoka County Sheriff's Office; Mike Meheen, in his official capacity as Chief of the South Lake Minnetonka Police Department; Brad Johnson, in his official capacity as County Attorney of the Anoka County Attorney's Office; and Mary Moriarty, in her official capacity as County Attorney of the Hennepin County Attorney's Office,<br><br>　　　　　　　Defendants. | Court File No. 0:24-cv-3749<br><br><br>**DEFENDANT MINNESOTA ATTORNEY GENERAL KEITH ELLISON'S ANSWER TO PLAINTIFFS' COMPLAINT** |

Defendant Keith Ellison, in his official capacity as Attorney General of the State of Minnesota ("Defendant" or "Attorney General") as and for his Answer to Plaintiffs' Complaint, admits, denies, and alleges as follows:

## ANSWER

Except as hereinafter expressly admitted, qualified, denied, or otherwise answered, Defendant denies each and every allegation in the Complaint.

## COMPLAINT

1. In *District of Columbia v. Heller*, the Supreme Court made clear that the "18th-century meaning [of "Arms"] is no different from the meaning today." 554 U.S. 570, 581 (2008). That is to say, "arms" are "'[w]eapons of offence, or armour of defence.'" *id*.

(quoting 1 Dictionary of the English Language 106 (4th ed.) (reprinted 1978)), and further defined arms to mean "'anything that a man wears for his defence, or takes into his hands, or useth in wrath to cast at or strike another.'" *Id*. (quoting 1 A New and Complete Law Dictionary (1771) (cleaned up)).

**ANSWER:** Defendant states that the judicial opinion cited speaks for itself, and denies the allegations to the extent they are inconsistent therewith.

2.  Knives are "arms" protected under the plain text of the Second Amend-ment. The "Second Amendment extends, prima facie, to all instruments that constitute bearable arms, even those that were not in existence at the time of the founding." *N.Y. State Rifle & Pistol Ass'n, Inc. v. Bruen*, 142 S.Ct. 2111 at 2132 (2021) (quoting *Heller*, 554 U.S. at 582). Indeed, the Supreme Court made clear in *Bruen* that the Second and Fourteenth Amendments protect the right to acquire, possess, and carry arms for self-defense and all other lawful purposes—inside and outside the home.

**ANSWER:** The first and third sentences of paragraph 2 contain legal conclusions to which no answer is required. To the extent an answer is required, Defendant denies the allegations. Asnwering the second sentence of paragraph 2, Defendant states that the judicial opinion cited therein speaks for itself, and denies the allegations to the extent they are inconsistent therewith.

3.  Despite Supreme Court precedent, the State of Minnesota makes it a crime, punishable by imprisonment, fine, or both, for "[w]hoever does any of the following … manufactures, transfers, or possesses … a switch blade knife opening automatically[.]" Minn. Stat. § 609.66, subd. 1(a)(4) (2023). This statute represents a complete ban on any-one ("whoever") that manufactures, transfers, or possesses an automatic opening knife ("switchblade") ("Knife Ban").1 The Knife Ban is part of Chapter 609 of the Minnesota Criminal Code of 1963 (see Minn. Stat. § 609.01), and the criminal sentencing provisions of the Knife Ban are found in Minn. Stat. § 609.66, subd. 1(b) (2023).

**ANSWER:** Defendant states that the statutes cited therein speak for themselves and Defendant denies the allegations to the extent they are inconsistent therewith. Defendant denies all remaining allegations in paragraph 3.

4.  Defendants enforce the Knife Ban and its enforcement denies individuals who reside in or visit Minnesota their fundamental, individual right to keep and bear these

common, constitutionally protected arms.

**ANSWER:** Defendant lacks knowledge or information sufficient to form a belief about whether Defendants enforce the Knife Ban; Defendant denies the remaining allegations in paragraph 4.

5. Because the Second Amendment "is exercised individually and belongs to all Americans" (*Heller*, 544 U.S. at 581), and because it "elevates above all other interests the right of law-abiding, responsible citizens to use arms for self-defense," Bruen, 142 S. Ct. at 2118, Defendants' enforcement of the Knife Ban must be declared unconstitutional and enjoined.

**ANSWER:** Defendant states that the allegations are a description of Plaintiffs' claim and legal conclusions, to which no answer is required. To the extent an answer is required, Defendant denies the allegations.

## PARTIES

### Plaintiff Parties.

6. Plaintiff Knife Rights, Inc. ("Knife Rights") is a section 501(c)(4) member advocacy organization incorporated under the laws of Arizona with a primary place of business in Gilbert, Arizona. Knife Rights serves its members, supporters, and the public through efforts to defend and advance the right to keep and bear bladed arms. knife rights has members and supporters in Minnesota and states throughout the country. The interests that Knife Rights seeks to protect in this lawsuit are germane to the organization's purposes. Knife Rights sues on behalf of its members, including the individual plaintiffs herein, as part of Knife Rights' extraordinary efforts to protect its members from the Minnesota knife ban's operation, enforcement, and imposition of its several criminal penalties. Plaintiff Knife Rights is hereinafter referred to as the "Institutional Plaintiff" and/or "Knife Rights." Knife Rights' members include peaceable, law-abiding individuals in Minnesota that want to exercise their right to bear arms, now and in the future, through the acquisition, possession, and carry of automatically opening knives prohibited under the Minnesota knife ban and Defendants' enforcement of that ban.

**ANSWER:** Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations, and therefore denies.

3

7. Organized in 2006, Plaintiff Knife Rights' mission is to, among other things, ensure that federal and state restrictions placed on knives are not only repealed, but stopped from ever being enacted. Knives are one of mankind's oldest and most commonly used tools, and their ownership and lawful possession, use, and carry are fully protected by the Second Amendment. Knife Rights seeks to ensure that the right to keep and bear these bladed arms is well protected through legislative efforts, defense of owners' civil rights through litigation and advocacy, and public education. Knife Rights serves its members, supporters, and the public through these efforts to defend and advance the right to keep and bear bladed arms.

**ANSWER:** Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations, and therefore denies.

8. As to bans on automatically opening knives (aka, "switchblade knives"), Knife Rights has worked to have switchblade bans repealed in 18 states. A detailed list of Knife Rights' legislative accomplishments is on the Knife Rights website at: https://kniferights.org/about/accomplishments, which is incorporated by reference herein.

**ANSWER:** Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations, and therefore denies.

9. As part of its educational efforts, Plaintiff Knife Rights' affiliated organization, Knife Rights Foundation, has published a downloadable app, "LegalBlade," summarizing each states' knife laws by "Knife Type" and providing the user with information on whether specific knives are legal for "Possession," "Open Carry," and "Concealed Carry" in each state. LegalBlade also provides direct links to each state's relevant knife/weapon statutes. Plaintiff Knife Rights supports and promotes the LegalBlade App.

**ANSWER:** Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations, and therefore denies.

10. Plaintiff Knife Rights is taking part in this legal action to further pursue its stated goals and purposes — and they are to expend substantial time, effort, money, and other resources directed at ensuring the Second Amendment right to bladed arms is fully protected in Minnesota and throughout the United States. Knife Rights' goals, purposes, and political, educational, and legislative accomplishments, however, are separate and distinct from its litigation efforts. Knife Rights, through its officers, volunteers and members, primarily advance the organization's political, educational, and legislative accomplishments. In contrast, Knife Rights' litigation endeavors require close work and coordination with special counsel, and that time, effort, and cost are over and above

4

Knife Rights' customary activities and accomplishments. In short, while Plaintiff Knife Rights' political, educational, and legislative efforts are part and parcel of its customary actions and accomplishments, Knife Rights' litigation time, efforts, and costs incurred are extraordinary and distinct. Plaintiff Knife Rights' extraordinary expenditures of time, effort, and cost on litigation matters to protect knife rights have placed a real, concrete drain on Knife Rights' resources, particularly the funds relied upon from our member contributions, and funds to also pursue our other customary political, educational, and legislative efforts. By expending substantial and extraordinary organizational time, effort, money, and other resources to challenge the Minnesota Knife Ban in court, Plaintiff Knife Rights has sustained injury, harm, and losses that are over, above, and beyond its customary actions and accomplishments. Such expenditures are exceptional and not merely in furtherance of Knife Rights' mission, goals, and purposes. Plaintiff Knife Rights' injury, harm, and losses may be avoided if Defendants were to take steps to repeal the Knife Ban. However, such action requires Minnesota legislative action to repeal the Knife Ban or court intervention (as with this case), to ensure that such steps, if ever taken, are permanent. Absent such actions, the Knife Ban remains the law in Minnesota and is, and can be, enforced, now and in the future—along with its severe criminal penalties, consequences, and stigma.

**ANSWER:** Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations, and therefore denies.

11. Plaintiff Cameron Wallin Sjodin is an adult natural person, a citizen of the United States, and a resident of Excelsior, Minnesota. Plaintiff Sjodin is a peaceable, non-violent individual who is eligible to keep and bear arms under state and federal law. Plaintiff Sjodin wishes and intends to acquire, possess, and carry an automatically opening knife ("switchblade") for any lawful purpose, including self-defense. Plaintiff Sjodin would acquire, possess, and carry such a knife but for Defendants' enforcement of the laws, policies, practices, and customs at issue in this case and his reasonable fear of arrest and prosecution for violation of Defendants' Knife Ban. Plaintiff Sjodin is a member of Plaintiff Knife Rights.

**ANSWER:** Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations, and therefore denies.

12. Plaintiff David Johnathon Draeger is an adult natural person, a citizen of the United States, and a resident of Ham Lake, Minnesota. Plaintiff Draeger is a peaceable, non-violent individual who is eligible to keep and bear arms under state and federal law. Plaintiff Draeger wishes and intends to acquire, possess, and carry an automatically opening knife ("switchblade") for any lawful purpose, including self-defense. Plaintiff Draeger would acquire, possess, and carry such a knife but for Defendants' enforcement of the laws, policies,

practices, and customs at issue in this case and his reasonable fear of arrest and prosecution for violation of Defendants' Knife Ban. Plaintiff Draeger is a member of Plaintiff Knife Rights.

**ANSWER:** Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations, and therefore denies.

13. Plaintiff Kevin Crystal is an adult natural person, a citizen of the United States, and a resident of Hennepin County, Minnesota. Plaintiff Crystal is a peaceable, non-violent individual who is eligible to keep and bear arms under state and federal law. Plaintiff Crystal wishes and intends to acquire, possess, and carry an automatically opening knife ("switchblade") for any lawful purpose, including self-defense. Plaintiff Crystal would acquire, possess, and carry such a knife but for Defendants' enforcement of the laws, policies, practices, and customs at issue in this case and his reasonable fear of arrest and prosecution for violation of Defendants' Knife Ban. Plaintiff Crystal is a member of Plaintiff Knife Rights.

**ANSWER:** Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations, and therefore denies.

14. Plaintiffs Sjodin, Draeger, and Crystal are hereinafter collectively referred to as the "Individual Plaintiffs."

**ANSWER:** Paragraph 14 contains a statement to which no response is required. To the extent a response is required, Defendant admits that Plaintiffs Sjodin, Draeger, and Crystal are hereinafter collectively referred to as the "Individual Plaintiffs."

**Defendant Parties**

15. Defendant Keith Ellison is the Attorney General of the State of Minnesota. Under Minnesota statutes and common law authority, Attorney General Ellison is the chief legal officer of the State with a duty to see that the laws of the state are uniformly enforced. Defendant Ellison is sued in his official capacity.

**ANSWER:** Defendant admits that Keith Ellison is the Attorney General of the State of Minnesota, he is the chief legal officer of the State, and he is sued in his official capacity. Defendant states that the Attorney General's duties are defined by the constitution, statute,

6

and common law, and Defendant denies the allegations in the second sentence of Paragraph 15 to the extent they are inconsistent therewith.

16. Defendant Sheriff Brad Wise is the elected Sheriff and chief law enforcement officer of the Anoka County Sheriff's Office. The Anoka County Sheriff's Office is the primary law enforcement agency for the municipality of Ham Lake, Minnesota. As Sheriff, he exercises, delegates, or supervises all the powers and duties of the Anoka County Sheriff's Office, including enforcing the Minnesota Knife Ban. Defendant Wise is sued in his official capacity.

**ANSWER:** The allegations in Paragraph 16 are not directed at Defendant and therefore no response is required. To the extent a response is required, Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations, and therefore denies.

17. Defendant Chief Mike Meehan is the chief law enforcement officer of the South Lake Minnetonka Police Department (SLMPD). The SLMPD is the primary law enforcement agency for the city of Excelsior, Minnesota. As Chief of SLMPD, Defendant Meehan exercises, delegates, or supervises all the powers and duties of the SLMPD, including enforcing the Minnesota Knife Ban. Defendant Meehan is sued in his official capacity.

**ANSWER:** The allegations in Paragraph 17 are not directed at Defendant and therefore no response is required. To the extent a response is required, Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations, and therefore denies.

18. Defendant County Attorney Brad Johnson is the chief prosecutor of the Anoka County Attorney's Office. As the County Attorney, he exercises, delegates, or supervises all the powers and duties of the Anoka County Attorney's Office, including enforcing and prosecuting the Minnesota Knife Ban. Defendant Johnson is sued in his official capacity.

**ANSWER:** The allegations in Paragraph 18 are not directed at Defendant and therefore no response is required. To the extent a response is required, Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations, and therefore denies.

19. Defendant County Attorney Mary Moriarty is the chief prosecutor of the Hennepin County Attorney's Office. As the County Attorney, she exercises, delegates, or

supervises all the powers and duties of the Hennepin County Attorney's Office, including enforcing and prosecuting the Minnesota Knife Ban. Defendant Moriarty is sued in her official capacity.

**ANSWER:** The allegations in Paragraph 19 are not directed at Defendant and therefore no response is required. To the extent a response is required, Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations, and therefore denies.

## JURISDICITION AND VENUE

20. This Court has jurisdiction over all claims for relief pursuant to 28 U.S.C.§§ 1331, 1343, 2201, and 2202, and 42 U.S.C. §§ 1983 and 1988, as this action seeks to redress the deprivation under color of the laws, statutes, ordinances, regulations, customs, and usages of the State of Minnesota, of the rights, privileges or immunities secured by the United States Constitution.

**ANSWER:** Paragraph 20 contains a legal conclusion to which no response is required. To the extent a response is required, Defendant denies.

21. Venue lies in this Court under 28 U.S.C. § 1391, as the events giving rise to Plaintiffs' claims arose or exist in this District in which the action is brought.

**ANSWER:** Paragraph 21 contains a legal conclusion to which no response is required. To the extent a response is required, Defendant denies.

## STATEMENT OF FACTS

22. Minnesota completely prohibits the manufacture, transfer, and possession (including carry) of a common automatically opening knife it classifies as a "switch blade knife opening automatically." Minn. Stat. § 609.66, sub. 1(a)(4) (2023).

**ANSWER:** Defendant answers that the statute speaks for itself and denies all allegations inconsistent therewith.

23. Under the statute, "Whoever does any of the following is guilty of a crime and may be sentenced as provided in paragraph (b): … (4) manufactures, transfers, or possesses … a switch blade knife opening automatically…." *Id.*

**ANSWER:** Defendant answers that the statute speaks for itself and denies all allegations inconsistent therewith.

24. Under Minn. Stat. § 609.66, subd. 1(b), a person convicted under subdivision 1(a)(4) of section 609.66, may be sentenced as follows:

> (1) if the act was committed in a public housing zone, …, a school zone, … , or a park zone, … , to imprisonment for not more than 364 days or to payment of a fine of not more than $3,000, or both; or
> (2) otherwise, including where the act was committed on residential premises …, to imprisonment for not more than 90 days or to payment of a fine of not more than $1,000, or both.

**ANSWER:** Defendant answers that the statute speaks for itself and denies all allegations inconsistent therewith.

25. Minn. Stat. section 609.02, subdivision 6, defines "dangerous weapon" as: "…any device designed as a weapon and capable of producing death or great bodily harm, … or other device or instrumentality that, in the manner it is used or intended to be used, is calculated or likely to produce death or great bodily harm, … ." *Id*.

**ANSWER:** Defendant answers that the statute speaks for itself and denies all allegations inconsistent therewith.

26. Automatically opening knives ("switchblades") are "arms" under the plain text of the Second Amendment. Moreover, Plaintiffs desire to keep and bear these arms for self-defense and any other lawful purpose. This conduct is covered by the plain text of the Second Amendment. As such, the Second Amendment presumptively protects the arms proscribed under the Knife Ban and the Plaintiffs' intended conduct. *Bruen*, 142 S. Ct. at 2126.

**ANSWER:** Defendant lacks knowledge or information sufficient to form a belief about Plaintiffs' desire to keep and bear switchblades for self-defense or other lawful purpose, and therefore denies the same. Defendant denies the remaining allegations in Paragraph 26.

27. To justify an arm regulation, "the government must demonstrate that the regulation is consistent with the Nation's historical tradition of [arms] regulation." *Bruen*, 142 S.Ct. at 2126, 2130.

**ANSWER:**   Defendant states that the judicial opinion cited speaks for itself, and denies the allegations to the extent they are inconsistent therewith.

28.   Automatically opening knives were first produced in the 1700s. *See* RICHARD V. LANGSTON, THE COLLECTOR'S GUIDE TO SWITCHBLADE KNIVES 30 (2001); SEE ALSO, TIM ZINSER ET AL., SWITCHBLADES OF ITALY 7-8 (2003).

**ANSWER:**   Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations, and therefore denies.

29.   By the mid-nineteenth century, factory production of automatically opening knives made them affordable to everyday customers. *See* RICHARD V. LANGSTON, THE COLLECTOR'S GUIDE TO SWITCHBLADE KNIVES 30, AT 7 (2001).

**ANSWER:**   Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations, and therefore denies.

30.   Indeed, on Plaintiffs' information and belief, millions of automatically opening knives have been in common use for decades.

**ANSWER:**   Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations, and therefore denies.

31.   Automatically opening knives are also common jurisdictionally. As of August 2024, at least 46 states allow the possession of automatically opening knives that Minnesota bans; and at least 36 states permit the public carry of said knives in some manner.

**ANSWER:**   Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations, and therefore denies.

32.   The automatically opening knives prohibited under the Defendants' enforcement of the Knife Ban are like other constitutionally protected knives that do not have the blade fixed in place in all relevant respects: They have a blade, a handle or grip, and the blade rests within the handle or grip of the knife when closed or collapsed, and when open or extended is "fixed" into a usable position (likewise through friction, geometry, or mechanical design) and may be used in the same manner as any other common knife.

**ANSWER:** Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations, and therefore denies.

33. Automatically opening knives "are particularly easy to open with one hand." *See, e.g.*, David Kopel, Clayton Cramer, and Joseph Edward Olson, *Knives and the Second Amendment*, UNIVERSITY OF MICHIGAN JOURNAL OF LAW REFORM, vol. 47, at 175 (Fall 2013). However, since a folding knife of any kind is only functional when fully opened, the argument that one method of opening a knife with one hand somehow increases the dangerousness to the public of a folding knife compared to the myriad of other methods of opening a knife with one hand is ludicrous. Whether a folding knife is opened manually or automatically, it is only useful, for any purpose, once it is fully opened. Thus, "Prohibitions on carrying knives in general, or of particular knives, are unconstitutional. For example, bans of knives that open in a convenient way (e.g., switchblades, gravity knives, and butterfly knives) are unconstitutional." *Id.* at 167.

**ANSWER:** The last two sentences of paragraph 33 are legal conclusions to which no response is required. To the extent a response is required, Defendant denies. Defendant lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations, and therefore denies.

34. In simple terms, an automatically opening knife is merely a folding pocket knife, an arm that is possession in millions of households throughout the country, including Minnesota. According to estimates from American Knife & Tool Institute, as many as 35,695,000 U.S. households own an outdoor knife or pocket knife. Moreover, assisted-opening and one-hand-opening knives—which are functionally identical to automatically opening knives—represent approximately 80 percent of all knives sold in the United States.

**ANSWER:** Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations, and therefore denies.

35. Defendants' enforcement of the Knife Ban denies individuals who reside in Minnesota, including the named Individual Plaintiffs and the Institutional Plaintiff's members, their fundamental, individual right to keep and bear these common, constitutionally protected arms for any lawful purpose, including self-defense.

**ANSWER:** Defendant denies the allegations in paragraph 35.

36. The Knife Ban has no historical pedigree, nor justification in the Nation's history and tradition of arms regulation. Indeed, the Knife Ban dates only to 1963.

**ANSWER:** Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations, and therefore denies.

37. Automatically opening knives, including those prohibited under the Knife Ban, are in common use for lawful purposes throughout the vast majority of the United States. Because automatically opening knives, including those prohibited under the Knife Ban, are possessed by peaceable people, they are not (and could not be) *both* "dangerous *and* unusual" arms.

**ANSWER:** Defendant lacks knowledge or information sufficient to form a belief about the allegations in the first sentence of paragraph 37, and therefore denies. Defendant denies the allegations in the second sentence of paragraph 37.

38. There is no constitutionally relevant difference between knives the that may be acquired, possessed, and carried on a person in Minnesota and those prohibited under the Knife Ban.

**ANSWER:** Defendant denies the allegations in paragraph 38.

## COUNT I
### (By All Plaintiffs Against All Defendants)
### DEPRIVATION OF CIVIL RIGHTS/RIGHT TO KEEP AND BEARARMS U.S. CONST., AMENDS. II AND XIV (42U.S.C. § 1983)

39. Plaintiffs reallege and incorporate by reference all previous paragraphs of this Complaint.

**ANSWER:** Defendant realleges his answers to all paragraphs of the Complaint as if fully set forth herein.

40. There is an actual and present controversy between the parties.

**ANSWER:** Defendant denies the allegations in paragraph 40.

41. The Second Amendment to the United States Constitution provides:

> A well-regulated Militia being necessary to the security of a free State, the right of the people to keep and bear Arms shall not be infringed.

In interpreting this text, the courts are guided by the principle that the "Constitution was written … and "its words and phrases were used in their normal and ordinary as distinguished from technical meaning." *Heller*, 554 U.S. at 576. Further, the Supreme Court instructs the lower courts to "start" with the "strong presumption that the Second Amendment right is exercised individually and belongs to all Americans." *Id.* at 581.

**ANSWER:** Defendant answers that the Second Amendment and cited judicial opinion speak for themselves and denies all allegations inconsistent therewith.

42. The Fourteenth Amendment to the United States Constitution provides in relevant part that:

> No state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any state deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.

**ANSWER:** Defendant answers that the Fourteenth Amendment speaks for itself and denies all allegations inconsistent therewith.

43. The Second Amendment is fully applicable to the States through the Fourteenth Amendment's Due Process and Privileges or Immunities Clauses. *McDonald v. City of Chicago*, 561 U.S. 742, 750 (2010); id. at 805 (Thomas, J., concurring).

**ANSWER:** Paragraph 43 contains a legal conclusion to which no answer is required. To the extent an answer is required, Defendant denies. Defendant further answers that the cited judicial opinion speaks for itself and denies all allegations inconsistent therewith.

44. "The constitutional right to bear arms in public for self-defense is not a second-class right, subject to an entirely different body of rules than the other Bill of Rights guarantees." *Bruen*, 142 S. Ct. at 2156 (quoting *McDonald*, 561 U. S., at 780 [plurality opinion]).

**ANSWER:** Defendant answers that the cited judicial opinion speaks for itself and denies all allegations inconsistent therewith.

45. "The very enumeration of the [Second Amendment] right takes out of the hands of government"—including Defendants—"the power to decide on a case-by-case

13

basis whether the right is *really worth* insisting upon." *Heller*, 554 U.S. at 635 (emphasis in original).

**ANSWER:** Defendant answers that the cited judicial opinion speaks for itself and denies all allegations inconsistent therewith.

46. In *Heller*, the Supreme Court declared unconstitutional the District of Columbia's laws that, among other things, prevented Mr. Heller from having a handgun "operable for the purpose of immediate self-defense." 554 U.S. at 635. The word "immediate" means, as is relevant here, "occurring, acting, or accomplished without loss or interval of time," i.e., "instant," "existing without intervening space or substance," and "acting or being without the intervention of another object, cause, or agency." *See*, e.g., https://www.merriam-webster.com/dictionary/immediate.

**ANSWER:** Paragraph 46 contains a legal conclusion to which no answer is required. To the extent an answer is required, Defendant denies. Defendant further answers that the cited judicial opinion speaks for itself and denies all allegations inconsistent therewith.

47. The Supreme Court "already recognized in Heller at least one way in which the Second Amendment's historically fixed meaning applies to new circumstances. The Second Amendment's reference to arms does not apply only to those arms in existence in the 18th century." *Bruen*, 142 S. Ct. at 2132 (quoting *Heller*, 554 U.S. at 582).

**ANSWER:** Defendant answers that the cited judicial opinion speaks for itself and denies all allegations inconsistent therewith.

48. "Just as the First Amendment protects modern forms of communications, and the Fourth Amendment applies to modern forms of search, the *Second Amendment extends, prima facie, to all instruments that constitute bearable arms, even those that were not in existence at the time of the founding*." Id. (emphasis added). "Thus, even though the Second Amendment's definition of arms is fixed according to its historical understanding, that general definition covers modern instruments that facilitate armed self-defense. *Cf. Caetano v. Massachusetts*, 577 U. S. 411, 411-412, 136 S. Ct. 1027, 194 L. Ed. 2d 99 (2016) (per curiam) (stun guns)." *Id.*

**ANSWER:** Defendant answers that the cited judicial opinions speaks for themselves and denies all allegations inconsistent therewith.

49.     In *Caetano*, Justice Alito issued a concurring opinion, joined by Justice Thomas, explaining that, in determining whether an arm is protected under the Second Amendment, "the pertinent Second Amendment inquiry is whether stun guns are commonly possessed by law-abiding citizens for lawful purposes today." *Caetano v. Massachusetts*, 577 U.S. 411 at 420.

**ANSWER:** Defendant answers that the cited judicial opinion speaks for itself and denies all allegations inconsistent therewith.

50.     As Justice Alito further explained, "[t]he more relevant statistic is that hundreds of thousands of Tasers and stun guns have been sold to private citizens, who it appears may lawfully possess them in 45 States." Id. (quoting *People v. Yanna*, 297 Mich. App. 137, 144, 824 N. W. 2d 241, 245 (2012) (holding Michigan stun gun ban unconstitutional) (cleaned up).

**ANSWER:** Defendant answers that the cited judicial opinion speaks for itself and denies all allegations inconsistent therewith.

51.     In *Bruen*, the Court reaffirmed principles clearly applied in Heller. Bruen also reiterated, among other things, that "the Second Amendment extends, prima facie, to all instruments that constitute bearable arms." *Id*. at 2132 (emphasis added).

**ANSWER:** Defendant answers that the cited judicial opinion speaks for itself and denies all allegations inconsistent therewith.

52.     There can be no dispute over the proper approach to evaluating Second Amendment claims. First, the Court must determine whether "the Second Amendment's plain text covers an individual's conduct" that is being restricted by a challenged law or policy. *Bruen*, 142 S. Ct. at 2129-2130. Second, if the answer is yes, the conduct is presumptively protected, and the burden then falls on the government to justify the challenged restriction by "demonstrating that it is consistent with the Nation's historical tradition of firearm regulation." *Id*. at 2130. If the government cannot make this demonstration, the restriction is unconstitutional, full stop. No interest-balancing or levels-of- scrutiny analysis can or should be conducted. *Id*. at 2127.

**ANSWER:** Paragraph 52 contains legal conclusions to which no answer is required. To the extent an answer is required, Defendant denies. Defendant further answers that the cited judicial opinion speaks for itself and denies all allegations inconsistent therewith.

53. Automatically opening knives—including those proscribed under the Knife Ban—are widely possessed and used for lawful purposes across much of the Country.

**ANSWER:** Defendant denies the allegations in paragraph 53.

54. *Bruen* confirms that the Second Amendment's plain text covers the arms (knives) and conduct Plaintiffs wish to engage in (keep and bear arms). *Bruen* also confirms that Heller already conducted the relevant historical analysis for determining whether a particular arm falls within the Second Amendment's protection. In order for a ban of an arm to be consistent with this Nation's history of firearm regulation, the government must demonstrate that the banned arm is both "dangerous and unusual." *Id.* at 2143. Arms that are in "common use today" simply cannot be banned. *Id.*

**ANSWER:** Paragraph 54 contains legal conclusions to which no answer is required. To the extent an answer is required, Defendant denies.

55. To be clear, "this is a conjunctive test: A weapon may not be banned unless it is *both* dangerous *and* unusual." *Caetano*, 577 U.S. at 417 (Alito, J., concurring) (emphasis original). Automatically opening knives are neither dangerous nor unusual within the meaning of this standard.

**ANSWER:** Defendant answers that the cited judicial opinion speaks for itself and denies all allegations inconsistent therewith. Defendant denies the remaining allegations in paragraph 55.

56. First, automatically opening knives are no more "dangerous" than any other bladed weapon that is not prohibited by Minnesota law. By any rational definition, automatically opening knives are merely folding pocket knives.

**ANSWER:** Paragraph 56 contains legal conclusions to which no answer is required. To the extent an answer is required, Defendant denies.

57. Moreover, automatically opening knives are unquestionably less dangerous than handguns, as handguns and all other kinds of firearms exact lethal force at a distance. However, handguns are not considered "dangerous" enough to justify any kind of prohibition under this formulation. In fact, "knives are far less dangerous than guns." Kopel et al., *Knives and the Second Amendment*, UNIVERSITY OF MICHIGAN JOURNAL OF LAW REFORM, vol. 47, at 167, 181-184 (Fall 2013) (collecting statistics on use of knives versus guns in violent crimes).

**ANSWER:** Paragraph 57 contains legal conclusions to which no answer is required. To the extent an answer is required, Defendant denies.

58.     Neither can automatically opening knives be considered "unusual" under this standard. When an arm is possessed and used by thousands for lawful purposes, it is "in common use" and it is protected — full stop. If an arm is in common use, it necessarily cannot be *both* "dangerous and unusual." And moreover, even arms not "in common use" cannot be banned so long as they are no more dangerous than other arms that are in common use.

**ANSWER:** Paragraph 58 contains legal conclusions to which no answer is required. To the extent an answer is required, Defendant denies.

59.     Even if the numerical quantity of any arm is difficult to establish, an arm being in common use can be proven by categorical and jurisdictional commonality. If an arm is categorically analogous or similar enough to a protected arm and it is lawful for them to be sold to private citizens in the majority of states, then the arm is common. As such, it cannot be *both* "dangerous and unusual" if it is lawful to possess and use in a majority of the Country.

**ANSWER:** Paragraph 59 contains legal conclusions to which no answer is required. To the extent an answer is required, Defendant denies.

60.     Common use operates in one direction: An arm that is initially uncommon can become common over time, but an arm that is common cannot become uncommon.

**ANSWER:** Paragraph 60 contains legal conclusions to which no answer is required. To the extent an answer is required, Defendant denies.

61.     Quite simply, Defendants' enforcement of the Knife Ban prohibits constitutionally protected arms and conduct, and thus violates the Second and Fourteenth Amendments to the United States Constitution.

**ANSWER:** Defendant denies the allegations in paragraph 61.

62.     Plaintiffs Sjodin, Draeger, and Crystal desire and intend to exercise their right to keep and bear an automatically opening knife for lawful purposes including self- defense, and would do so, but for the Defendants' enforcement of the Knife Ban.

**ANSWER:** Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations, and therefore denies.

63. Plaintiff Knife Rights' Minnesota members desire and intend to exercise their right to keep and bear automatically opening knives for lawful purposes including self-defense, and would do so, but for Defendants' enforcement of the Knife Ban.

**ANSWER:** Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations, and therefore denies.

64. On information and belief, Defendants have been and are actively enforcing the Knife Ban. Plaintiffs reasonably fear that Defendants will continue to enforce the Knife Ban against them.

**ANSWER:** Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations, and therefore denies.

65. By enforcing Minnesota's Knife Ban against the Individual Plaintiffs, and Institutional Plaintiff's members, Defendants have violated the Plaintiffs' rights protected under the Second and Fourteenth Amendments.

**ANSWER:** Defendant denies the allegations in paragraph 65.

66. The Defendants' enforcement of the laws, policies, practices, and customs at issue in this case against Plaintiffs and other similarly situated members of the public cause injury and damage actionable under federal law, 42 U.S.C. §1983. Plaintiffs thus seek declaratory and injunctive relief and the recovery of attorneys' fees and costs.

**ANSWER:** Defendant denies the allegations in paragraph 66 and further denies that Plaintiffs are entitled the requested relief and recovery of attorneys' fees and costs.

## AFFIRMATIVE AND OTHER DEFENSES

1. The Complaint fails to state a claim upon which relief may be granted.

2. Plaintiffs lack standing to pursue a claim against Attorney General Ellison.

3. The claim is not ripe.

4. Plaintiffs have suffered no actual harm.

5. Defendant reserves the right to assert additional defenses as may be established by the facts of this case.

**WHEREFORE**, Defendant prays for the following relief:

1. That Plaintiffs take nothing and their cause of action be dismissed with prejudice on the merits;

2. That Defendant be awarded, pursuant to applicable law, his costs, disbursements, and reasonable attorney fees incurred in defending this action; and

3. Such other relief deemed just and proper.

Dated: December 6, 2024            Respectfully submitted,

KEITH ELLISON
Attorney General
State of Minnesota


s/ Anna Veit-Carter
MICHAEL GOODWIN
Assistant Attorney General
Atty. Reg. No. 0390244

ANNA VEIT-CARTER
Assistant Attorney General
Atty. Reg. No. 0392518

445 Minnesota Street, Suite 1400
St. Paul, Minnesota 55101-2131
(651) 757-1456 (Voice)
(651) 282-5832 (Fax)
Michael.goodwin@ag.state.mn.us
anna.veit-carter@ag.state.mn.us

ATTORNEYS FOR DEFENDANT ATTORNEY GENERAL OF MINNESOTA